**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **AMGUARD INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO: 1:21-cv-00075** |
| **V.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **A&H TOWING, LLC ET AL.,** | ) | **MAGISTRATE JUDGE** |
| | ) | **HOLMES** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Come now the Defendants, A&H Towing, LLC, Harold Padgett, Austin Padgett, and John

D. Venable, by and through undersigned counsel, and for their Memorandum in Support of their

Motion for Summary Judgment, would show as follows:

INTRODUCTION

In this declaratory judgment action, the Plaintiff, AmGuard Insurance Company

("AmGuard"), sues its insured seeking a declaration from the Court that the commercial general

liability and business auto liability insurance policy issued to Defendants (hereinafter "Policy") is

void and thus AmGuard is under no duty to defend or indemnify its insureds for two underlying

losses and pending lawsuits.

AmGuard seeks to void coverage under the Policy on two alternative grounds – (1) on the

basis of material misrepresentation in the application for insurance pursuant to T.C.A. §56-7-103,

because AmGuard incorrectly claims that Austin Padgett should have been identified as a "Driver"

or someone who could possibly drive a vehicle; and (2) on the basis of the Policy condition

allowing for avoidance of coverage for fraud or intentional concealment, because it claims A&H

Towing fraudulently or intentionally concealed Austin Padgett's employment status and/or the change in circumstances arising after the Policy was delivered leading to Austin Padgett's occasional use of a vehicle. The undisputed facts do not support the Plaintiff's claims.

Defendant now moves for summary judgment because the undisputed facts negate the proof necessary to establish Plaintiff's claims under both grounds asserted and the Plaintiff cannot present material facts sufficient to present a jury question as to either claim. As discussed below, under Count I, the undisputed facts demonstrate that statements in the application for insurance were all truthful and correct when made and submitted, notwithstanding a change in circumstances after the Policy was delivered and became effective. Furthermore, under Count II, the facts which Plaintiff now claims were fraudulently concealed were disclosed to AmGuard's agent, Aldridge Insurance Agency, thus estopping AmGuard from claiming any concealment or fraud.

## MATERIAL FACTS

### (*The Underlying Losses*)

The underlying losses and claims for which AmGuard seeks to avoid coverage arise from two separate motor vehicle wrecks involving an A&H Towing vehicle driven by Austin Padgett. The first wreck occurred on September 1, 2020, and involved a small collision with a passenger car that initially appeared to only involve minor property damage (hereinafter "Killen Wreck"). [SUMF #25]. The second wreck was of a catastrophic nature and occurred on February 17, 2021, during inclement weather and involved an A&H Towing vehicle driven by Austin Padgett and a passenger vehicle occupied by Melissa Carter and her son (hereinafter "Carter Wreck"). [SUMF # 30-32]. That collision resulted in the passenger car engulfing in flames. [SUMF # 30-32]. Austin Padgett was able to pull Melissa Carter from the burning car, but her son, Maxwell Howard, perished in the fire. [SUMF # 32]. On March 10, 2021, A&H Towing, Harold Padgett, and Austin

Padgett were sued by Melissa Carter for personal injury and wrongful death seeking in excess of $10,000,000 (hereinafter "Carter Lawsuit"). [See D.E. # 1-4]. The claims arising in the Carter Lawsuit were timely submitted to AmGuard for defense and indemnity. Additionally, on July 9, 2021, over ten months after the Killen Wreck, a lawsuit was filed against Defendants seeking damages for injuries sustained by the occupant of the passenger vehicle in the Killen Wreck, which was similarly submitted to AmGuard for defense and indemnity under the Policy. [SUMF #35; See D.E.# 1-2].

*(Application for Insurance)*

A&H Towing was in the business of towing and roadside assistance from 2016 to when it shut down in October of 2022. [SUMF # 1]. Harold Padgett was the sole owner of A&H Towing.[1] [SUMF #1]. In 2020, Harold Padgett d/b/a A&H Towing applied for business auto liability insurance through Aldridge Insurance Agency ("Agent"). [SUMF #2]. The Agent was utilized in the application process as to the AmGuard Policy upon which this Action is based. [SUMF #2]. The application for insurance prepared by the Agent was dated May 12, 2020, and was electronically signed by Harold Padgett on July 5, 2020 (hereinafter "Application" or "Insurance Application") [SUMF # 2-5; See also Exh. 5]. The Policy was delivered and went into effect on July 12, 2020. [SUMF # 5].

At the time the Application was signed and submitted, through the date on which the Policy was delivered, the statements contained in the Application remained correct and truthful. [SUMF # 8-9]. Specifically, at the time Application was signed and submitted, A&H Towing had 4 employees who were Harold Padgett (Driver/Owner), Randal Venable (Driver), Jerry Rich (Driver), and Austin Padgett (Dispatcher and shop mechanic). [SUMF # 10]. The Application did

---

[1] The "A&H" in A&H Towing stood for Amanda and Harold Towing. [SUMF #1].

not ask the applicant to list the names of all employees. [SUMF# 14]. If the Application required all employees to be named, Austin Padgett would have been listed. [SUMF# 14].

A separate two-page document titled "Driver Schedule" was attached to the end of the Application which correctly and truthfully lists four individuals who could possibly drive A&H Towing vehicles under the Policy – 1. Harold Padgett; 2. Randal Venable; 3. John Venable; and Jerry Rich. [SUMF # 10-11; See also Exh. 5, Towing Insurance Application, P. 9]. Of those four individuals, only three were employees of A&H Towing, as John D. Venable was not an employee. [SUMF #12]. Rather, John D. Venable was listed as a possible driver because he was the owner/financer and lessor of one of the A&H Towing trucks. [SUMF #12-13]. AmGuard was aware that John D. Venable was the owner/lessor of one of the trucks because the Policy names him as an additional insured (lessor). [See D.E. 1-1, Page ID#52].

When the Application was signed and submitted, Austin Padgett was not driving for A&H Towing in any capacity, but, rather, was working solely as a Dispatcher and shop mechanic. [SUMF # 16-19]. Although Austin Padgett did drive for approximately 6 months in 2019 when he first started working at A&H Towing, he completely stopped driving around September or October of 2019 due to an accumulation of points on his CDL. [SUMF # 16-19].

(*Post-Policy Change in Circumstances*)

At some point after the Policy was delivered and well after the Application was prepared, A&H Towing fired one its Drivers – Jerry Rich. [SUMF # 20]. After this occurred, A&H Towing was down a driver, and Austin Padgett, although still employed as the Dispatcher/shop mechanic, began to infrequently drive to a call when the company drivers were unavailable. [SUMF #20-22]. Austin Padgett first undertook this as-needed role in August-September of 2020, after the Policy was issued. [SUMF #20-22]. Harold Padgett did not immediately notify the Agent of this change

in operations because Austin Padgett was not employed as a Driver and it was not common for him to drive to a call. [SUMF#23-24]. Nevertheless, in early September of 2020, Harold Padgett specifically informed the Agent of the circumstances and that Austin Padgett was going to drive occasionally as needed after recently losing a driver. [SUMF#24; 26-27]. Thereafter, the Policy remained in effect and the Agent continued to collect premium payments on behalf of AmGuard. [SUMF #6, 26-27; See also D.E. # 1-1, Page ID#20]. The first time AmGuard notified the insured of its concerns was through its reservation of rights notice after the Carter Lawsuit was filed. [SUMF #36].

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absences of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*. In evaluating a motion for summary, the mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Id*.

<u>LAW & ARGUMENT</u>

I.    <u>**UNDISPUTED FACTS SHOW THAT NO MATERIAL MISREPRESENTATIONS ARE CONTAINED IN THE APPLICATION FOR INSURANCE**</u>

Plaintiff alleges, under Count I of its Complaint, that the Policy is void pursuant to T.C.A. §56-7-103, because of material misrepresentations contained in the Application for insurance.

[D.E. 1, Page ID# 15].  As explained herein, the undisputed facts negate the first element Plaintiff is required to prove under this Count – that a misrepresentation existed – rendering any further analysis futile.

Whether a material misrepresentation in an application for insurance will serve to void an insurance policy is governed by Tenn. Code Ann. § 56-7-103, which provides as follows:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. §56-7-103 (West 2023).  "Under this statute, to avoid coverage, *the insurer must first prove that the answers in the application were false*; then it must prove that the false answers were given with intent to deceive the insurer or that the false answers materially increased the risk of loss." *Womack v. Blue Cross and Blue Shield*, 593 S.W.2d 294, 295 (Tenn. 1980)(emphasis added).  Under this approach, the first element the insurer must prove is that the insurance application contains a falsity at the time the representations were made.  The Tennessee Supreme Court, in *Gatlin v. World Service Life Ins. Co*., interpreting the above Statute, held,

> [T]he concept of "misrepresentation" is totally distinct and separate from the concepts of "intent to deceive" or "increase in the risk of loss." The latter elements are not analyzed at all until and unless a matter has been "misrepresented."

*Gatlin*, 616 S.W.2d 606, 608 (Tenn. 1981).  "Where the insurer alleges that the representations made by the insured in an application for insurance upon which the policy was issued are false, the burden of proving the falsity of such representations rests on the company."  *Shipley v. Am. Central Ins. Co*., 109 S.W.2d 100, 102 (Tenn. Ct. App. 1937).

6

A.    Relevant Time Period

Under the particular circumstances of the case at bar, it is important, as an initial matter, to appreciate the relevant time period for determining whether the application contains a material misrepresentation.

The relevant time period for determining whether a statement in an insurance application is false or amounts to a misrepresentation is when the application is completed continuing <u>up to the time the policy is delivered</u>.  See *Adams v. Tenn. Farmers Mut. Ins. Co.*, 2010 WL 1444477 (Tenn. Ct. App., April 13, 2010)(holding that a representation or omission regarding a change in circumstances occurring after the policy is delivered is analyzed differently than representations made in the application); <u>State Farm Life Ins. Co. v. Lawless</u>, 586 S.W.2d 468, 470 (Tenn. Ct. App. 1979)(holding "it is established in Tennessee that a representation made in an application for insurance is a *continuing affirmation of the truthfulness of such representation until the policy is delivered*.").  As such, a failure to notify an insurer regarding changes in circumstances occurring <u>after</u> the Policy was delivered are not analyzed under the material misrepresentation standard of T.C.A. 56-7-103[2].  The court, in *Adams v. Tenn. Farmers Mut. Ins. Co*., citing the recognized insurance treatise, *Couch on Insurance*, noted that "the failure of the insured to inform the insurer of acts or conditions occurring after issuance or renewal of the policy will not avoid the policy."[3]

In the present matter, the relevant time period is May 12, 2020, continuing through July 12, 2020.  Specifically, Application for insurance was dated May 12, 2020. [SUMF #3].  The Application was electronically signed by the insured, Harold Padgett, on July 5, 2020. [SUMF #3].

_____

[2] See *Adams v. Tenn. Farmers Mut. Ins. Co*., 2010 WL 1444477 at *9-11 (holding that statements and conduct of an insured after the policy is issued are treated differently than representations made in the application).

[3] *Adams*, 2010 WL 1444477 at *11, quoting *Couch on Insurance* §84:9 (3d Ed. 2009).

7

The Policy was delivered and went into effect on July 12, 2020. [D.E. 1-1, Page ID#20]. Accordingly, the question becomes whether the representations in the Application were truthful as of May 12, 2020, through July 12, 2020.

B.      The Material Misrepresentations Alleged By Plaintiff

Plaintiff, under Count I of its Complaint, essentially alleges two misrepresentations were made in the Application – (1) that Page 1 of the Application misrepresents the "Towing Operation" "# of Employees" as "4" which did not include Austin Padgett; and (2) that the "Driver Schedule" attached to the end of the Application did not identify Austin Padgett as a current or possible driver. [See D.E. 1, Page ID# 6, ¶¶ 21-23; See also Ex. 5, Application p. 9].

1.      No Misrepresentation Of Number of Employees

Page 1 of the Application asked for the number of employees. It reads as follows:

| OPERATION | # OF EMPLOYEES | PAYROLL | RECEIPTS |
|---|---|---|---|
| Towing | 4 | $ 100,000.00 | $ 250000 |
| Service Station | | $ | $ |
| Auto Mechanic | | $ | $ |
| Auto Body Shop | | $ | $ |
| Used Car Sales | | $ | $ |
| Dismantling/Salvage | | $ | $ |
| Repossession | | $ | $ |
| Trucking *If Trucking Section Completed, Need Receipts | | $ | $ |
| Other (Describe) | | $ | $ |

[Exh. 5, p. 1]. Importantly, the Application does not ask for the names of each employee. Rather, it only asks for the number of employees and the aggregate payroll. Information not asked in the insurance application is presumed immaterial.[4]

---

[4] *Adams*, 2010 WL 1444477 at *10 citing *Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 316 (1928).

8

During the relevant time period, A&H Towing had four employees – Harold Padgett; Austin Padgett; Randal Venable; and Jerry Rich. [SUMF #10]. Harold Padgett, Randal Venable, and Jerry Rich were the Drivers of the company's three tow trucks [SUMF #10], and Austin Padgett was employed as the dispatcher and shop worker/mechanic [SUMF#10]. Accordingly, it was a truthful statement to list the number of employees as being four.

In an effort to claim there were more than 4 employees, AmGuard refers to the "Driver Schedule" attached to the Application which identified four people who were authorized to operate A&H Towing vehicles at that time. It identified the following 4 people: 1. Harold Padgett; 2. Randal Venable; 3. John Venable; and 4. Jerry Rich. [Exh. 5, application, p. 9; See also Compl., D.E. 1, Page ID#5]. However, of the 4 individuals listed as possible drivers on the Driver Schedule, only three of those individuals were employees. Specifically, John Venable was not an employee of A&H Towing. [SUMF#12]. Rather, John Venable was listed on the "Driver Schedule" as a possible driver/operator because he owned and financed one of the scheduled trucks. [SUMF#13]. AmGuard was aware that John Venable was the lessor/financer of one of the trucks as evidenced by the Policy listing Mr. Veneble as an "Additional Insured (Lessor)." [D.E. 1-1, Page ID# 52].

The foregoing undisputed facts demonstrate that at the time of the Application, A&H Towing had 4 employees, which included Austin Padgett. John Venable, although listed on the Driver Schedule due to his ownership interest in one of the trucks, was not an employee of A&H Towing and thus was not included in the number of employees listed on the first page. Had AmGuard asked the insured to specifically name of every employee, Austin Padgett would have been included, but it did not ask this question. As such, no misrepresentation was made as to the number of employees listed on Page 1 of the Application. Accordingly, the representation relative

9

to the number of employees listed in the Application cannot serve as a basis for the alleged material misrepresentation.

        2.    <u>No Misrepresentation As To Drivers</u>.

The second misrepresentation asserted by AmGuard allegedly arises from the insured's failure to disclose Austin Padgett as a possible driver of A&H Towing vehicles. Specifically, AmGuard has alleged the following:

> 21.  As it turned out, A&H did not identify in its application or submit the names of every current or possible driver of A&H vehicles.
>
> 22.  A&H did not ever submit any additional drivers beyond the initial four (4) drivers identified in the application signed by Harold Padgett on May 12, 2020.
>
> 23.  A&H never reported Austin Padgett to Guard as a potential driver of A&H vehicles.

[D.E. 1, Page ID# 6]. The undisputed material facts negate this claim and show that Austin Padgett was not driving for A&H Towing in any capacity when the Application was submitted and the Policy delivered. Thus, AmGuard is unable to show the falsity of the statements in the Application.

Specifically, the undisputed material facts show as follows: For example, Austin Padgett testified that he began working at A&H Towing in 2018 or 2019. [SUMF#15]. When he first began working for A&H Towing, Austin Padgett drove for a period of approximately 6 months. [SUMF#16]. In Fall of 2019, Austin Padgett accumulated points on his CDL license which led to him no longer driving for A&H Towing in any capacity for approximately one year [SUMF#17-19]. Once he stopped driving in the Fall of 2019, he continued working for A&H Towing solely as a dispatcher and shop worker. [SUMF#17-19]. From approximately October of 2019 through August or September of 2020, Austin Padgett was not driving A&H Towing vehicles in any

capacity. [SUMF#17-19]. Accordingly, when the Application was submitted as well as when the Policy was delivered, Austin Padgett was not driving for A&H Towing in any capacity.

After the Policy was delivered on July 12, 2020, a change in circumstances occurred leading to A&H Towing losing one of its drivers. [SUMF#20]. Due to this loss, sometime around the end of August or September, 2020, Austin Padgett started infrequently filling in as needed when a call would come in and all of the company drivers were unavailable [SUMF#20-22]. Austin Padgett started driving from time to time in this "as-needed" capacity shortly before the Killen Wreck occurred in September of 2020. [SUMF#20-23]. Soon after the Killen Wreck, Harold Padgett informed the insurance agent at Aldridge Insurance Agency, through whom the Policy was purchased, about the Killen Wreck and that Austin Padgett was starting to occasionally drive as needed. [SUMF#26-28].

The foregoing undisputed material facts demonstrate that at the time the Application was submitted through the date the Policy was delivered, Austin Padgett was not a "Driver" and was not operating A&H Towing vehicles in any capacity. As such, there can be no material misrepresentation in the Application arising from a failure to list Austin as a driver in the Driver Schedule.

While there was a change in circumstances after the Policy was delivered leading to Austin Padgett driving infrequently, those facts are not relevant for determining whether a material misrepresentation was contained in the Application. Rather, the issues regarding disclosure of the post-policy change in circumstances are analyzed under a different analysis dealing with fraud and intentional concealment, which are addressed under separate Heading herein.

In summary, the undisputed material facts demonstrate that the information and representations contained in the Application were truthful and correct at the time they were made,

which negates the first element of proof, *i.e.*, an actual misrepresentation, required of an insurer seeking to void a policy under Tenn. Code. Ann. §56-7-103. Therefore, the Defendants are entitled to judgment as a matter of law as to Count I of the Plaintiff's Complaint.

## II.   UNDISPUTED FACTS DO NOT SUPPORT VOIDING THE POLICY UNDER THE FRAUD AND INTENTIONAL CONCEALMENT CONDITION.

AmGuard's second basis alleged for voiding the Policy, as set forth in Count II of its Complaint, relies upon the Policy language found in <u>Section IV.B.2.</u> of the Business Auto Coverage Form in the Policy. That Section of the Policy provides as follows:

**SECTION IV – BUSINESS AUTO CONDITIONS**

**B. General Conditions**

    **2. Concealment, Misrepresentation, Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:
a. This Coverage Form;
b. The covered "auto";
c. Your interest in the covered "auto"; or
d. A claim under this Coverage Form.

[D.E. 1-1, Page ID #79]. Unlike the analysis under T.C.A. §56-7-103, which allows for an <u>innocent</u> misrepresentation in the application to void a policy, here, the insurer bears the burden of proving fraud and/or intent to conceal or deceive.[5] The above-quoted provision in the Policy

---

[5] See *Joyner v. Omaha Prop. & Cas. Ins. Co.*, 1993 WL 295049, *3 (Tenn. Ct. App. Aug. 4, 1993)(holding "we are of the opinion that when the insurer raises the defense of fraud in connection with a claim made subsequent to the issuance of the policy, in order to void the policy such false statements must be willfully false in some material matter and made with intent to deceive."); see also <u>Adams</u>, 2010 WL 1444477 at *9; *Baker v. Nationwide Mut. Ins. Co.*, 646 S.W.2d 440, 443 (Tenn. Ct. App. 1982); *Nix v. Sentry Ins.*, 666 S.W.2d 462, 464 (Tenn. Ct. App. 1983)(holding that after policy issued and a loss occurs, "voiding the policy is in the nature of a penalty or forfeiture [and] as in all cases of forfeiture, a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, if at all.")

allowing an insurer to void a policy for fraud or intentional concealment is most commonly addressed by the courts when the insurer alleges fraud, concealment, or misrepresentation in a proof-of-loss relating to a claim.[6] Here, no allegation has been made relating to the claim for loss.

Under the express terms of <u>Section IV.B.2.</u>, the insurer must produce evidence that the insured's conduct rose to the level of "fraud" and that the insured acted with actual intent to conceal material facts. "In order to void a policy for fraud there must be present in the evidence facts about which reasonable minds cannot differ, showing that the insured made a false representation, (a) in reference to a material fact, (b) with knowledge of its falsity, (c) the intent to deceive, and (d) action taken in reliance upon the representation." *Edwards v. U.S.*, 140 F.2d 526, 530 (6th Cir. 1944). This burden is consistent with Tennessee caselaw addressing similar "fraud and concealment" provisions. As noted by the court in *Wassom v. State Farm Mut. Auto Ins. Co*., "to constitute fraud or false swearing under a fraud or concealment condition of a policy, there must be false statements willfully made with respect to a material matter and with the intention of thereby deceiving the insurer."[7] The insurer bears the burden of proving that the insured intended to deceive or defraud the insurer on the plainest of grounds. *Id*. at 783.

---

[6] See e.g. *Wassom v. State Farm Mut. Auto Ins. Co*., 173 S.W.3d 775 (Tenn. App. 2005)(perm. app. denied)(holding "in some policies there is a provision that any fraud or false swearing by insured relating to the loss or in the proofs of loss forfeits any right of recovery by him, a usual provision being that the policy shall be void in case of any fraud or false swearing by insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss.").

[7] *Id*. at 781 (quoting 44 *Am.Jur.2d Insurance* §1371 (2002)); See also *Matthews v. Auto Owners Mut. Ins. Co*., 680 F. Supp. 287, 289 (M.D. Tenn. 1988)(holding that [u]nder Tennessee law, material misrepresentations made in a proof of loss statement do not void an insurance policy, unless evidence establishes, *on the plainest grounds*, *that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer*.")(emphasis added)

### A. No Concealment or Misrepresentations at Time of Application.

As previously addressed herein, the undisputed facts demonstrate that the statements and information contained in the Application for insurance were correct and truthful at the time the Application was submitted and, therefore, no misrepresentations or concealments exist for that time period, whether innocent, fraudulent, or otherwise.

### B. Failure to Disclose New Driver After Policy Issued Cannot Support Claims for Fraud, Intentional Concealment, or Intentional Misrepresentation.

In its Complaint, Plaintiff quotes an Endorsement to the Policy under Form BA 99 11 03 17 requiring disclosure of new operators and drivers. [D.E. 1, Page I.D. 9]. AmGuard relies upon this Endorsement to claim that, after the Policy was issued, the insured failed to disclose that Austin Padgett as a Driver or Operator and that somehow rises to the level of fraud. The Policy Endorsement cited by the Plaintiff in its Complaint provides as follows:

**NOTICE**
**UNREPORTED DRIVERS – NEW DRIVERS**

ALL NEW OPERATORS AND DRIVERS HIRED OR DESIGNATED DURING THE TERM OF THIS POLICY MUST BE IMMEDIATELY REPORTED TO THE COMPANY. YOUR SCHEDULE OF DRIVERS IS MATERIAL TO THE RISK WE INSURE. YOUR FAILURE TO REPORT A NEW OPERATOR OR DRIVER IS A MATERIAL MIS-REPRESENTATION OF THE RISK WE INSURE AND INCREASES THE HAZARD INSURED AGAINST. FAILURE TO REPORT A NEW OPERATOR OR DRIVER MAY RESULT IN CANCELLATION OF YOUR POLICY.

NEWLY AUTHORIZED OPERATORS AND DRIVERS SHOULD BE REPORTED TO YOUR AGENT.

[D.E. 1-1, Page I.D. #70].

First, it must be noted that this Endorsement is not an exclusion. While the cited Endorsement did place the insured on a duty to disclose "new operators and drivers," it does not exclude coverage automatically void coverage for a failure to comply with the Endorsement's directive; and, thus, it cannot serve to defeat coverage or void the Policy standing alone. It should

also be noted that neither the Endorsement nor the Policy defined "New Drivers or Operators," given that Austin Padgett was not a Driver or Operator.

Nevertheless, because the "New Driver" Endorsement does not in and of itself serve as a basis to void the Policy, AmGuard can only rely upon this Endorsement *in conjunction with* the conditions contained Section IV.B.2. – "Concealment, Misrepresentation, or Fraud." In other words, AmGuard must prove that (1) the insured failed to disclose that Austin Padgett was driving as needed in violation of the Endorsement's directive; and (2) that failure constituted fraud and/or an intentional concealment under Section IV.B.2. By the Policy Section's own terms, an inadvertent, innocent failure to disclose a new driver will not serve as a basis to void the policy or exclude coverage, which is consistent with the above-referenced caselaw interpreting similar provisions.

The undisputed material facts relevant to this issue are as follows: At the time of the Application was submitted through when the Policy was delivered, Austin Padgett was working solely as a dispatcher and shop mechanic and had not driven any of A&H Towing vehicles in any capacity since the Fall of 2019. [SUMF #16-19]. After the Policy was issued, A&H Towing lost one of its drivers at which point, Austin Padgett would occasionally drive a truck when the other drivers were unavailable. [SUMF #20-22]. Beginning sometime around late August or early September of 2020, Austin Padgett assumed this "as needed" role and would occasionally drive, but his job continued to be that of a dispatcher/shop mechanic. [SUMF #20-22]. From approximately September of 2020 through February 17, 2021 (date of the Carter Accident), Austin Padgett worked for A&H Towing as a dispatcher and shop mechanic, but would infrequently from time to time drive a truck to a call when the company drivers were unavailable. [SUMF # 20-22].

Admittedly, Harold Padgett did not immediately inform the insurer or Agent of the recent change in circumstances leading to Austin Padgett needing to drive on a call from time to time. [SUMF#21-23]. However, because Austin Padgett was employed as a dispatcher/shop mechanic, not a Driver, and it was not a common occurrence for Austin to drive to a call at that time, Harold Padgett did not believe he needed to inform the Agent. [SUMF #23]. Harold Padgett's failure to inform the Agent of this fact prior to the Killen Wreck was an inadvertent, honest misunderstanding, which Mr. Padgett acknowledged in this deposition with the benefit of hindsight. [SUMF # 23-24; Exh. 1, H. Padgett Dep., P. 20].

However, within a day or two after the Killen Wreck in September of 2020, Harold Padgett spoke to the Agent at Aldridge Insurance Agency to inform them of the Killen Wreck at which time he specifically informed the insurance Agent was beginning to drive as needed on a call when the company drivers were unavailable, although his job was still that of dispatcher/shop mechanic. [SUMF#26-28]. As such, the insurance Agent through whom the Policy was purchased was informed in September of 2020 that Austin Padgett was driving for A&H Towing occasionally. After that disclosure, the Policy continued to be in effect and the Agent continued to collect premiums from A&H Towing and Harold Padgett. When Harold Padgett informed the Agent that Austin Padgett was starting to drive again as needed, the Agent informed Harold Padgett that Austin would be covered because he was a family member and had permission to drive the truck. [SUMF#28-29].

1.   FAILURE TO DISCLOSE BEFORE KILLEN WRECK DOES NOT RISE TO THE LEVEL OF FRAUD OR INTENT TO CONCEAL

Harold Padgett testified he failed to tell his agent that Austin Padgett was occasionally driving some after the Policy was issued prior to the Killen Accident. However, Mr. Padgett did not realize he needed to inform his agent or AmGuard because Austin was still employed as a

16

dispatcher/shop worker and he would only occasionally fill in, and that didn't start until shortly before the Killen Accident occurred. While Mr. Padgett acknowledged that, in hindsight, he should have made the agent aware, his failure to notify the agent specifically of this change in circumstances was not made with intent to conceal and defraud the insurer. The undisputed facts demonstrate that the brief failure to notify the Agent of the change in circumstance was not intentional or with any indicia of fraud, because Austin Padgett was still employed as a dispatcher/shop mechanic, not an "Operator or Driver" and he only infrequently drove to a call when all company drivers were unavailable.

The Plaintiff cannot produce any material facts to demonstrate that this inadvertent failure was committed with intent to defraud or conceal material facts, and thus it cannot serve as a forfeiture of coverage for the Killen Wreck.

      2.      <u>NOTICE TO AGENT OF CHANGE IN CIRCUMSTANCES AFTER POLICY ISSUED IS IMPUTED TO INSURER AND AMGUARD IS ESTOPPED FROM NOW DENYING SUCH KNOWLEDGE BEFORE CARTER WRECK</u>

Likewise, AmGuard's argument under Count II of the Complaint fails to void coverage as to the Carter Wreck for two reasons: (1) the undisputed facts fail to demonstrate a genuine fact question relative to whether the insured acted with fraud and/or intent to conceal; and (2) the information AmGuard claims was concealed – that Austin Padgett started driving as needed after the Policy was issued – was disclosed to the insurance Agent months before the Carter Wreck occurred and thus AmGuard is estopped from claiming otherwise.

Unlike with the Killen Wreck, the insured, Harold Padgett, *did disclose* the recent change in circumstances and that Austin Padgett was occasionally driving as needed months before the Carter Wreck. Specifically, the undisputed facts demonstrate that Harold Padgett informed the Agent at Aldridge Insurance Agency in the beginning of September, 2020, that Austin Padgett was

starting to occasionally drive on calls as needed when company drivers were unavailable. [SUMF #26-27]. After disclosing those facts, the Agent advised that Austin Padgett should be covered since he was Harold's son and driving with permission. [SUMF#28-29]. After this disclosure was made, the Policy continued to be in effect and AmGuard continued to collect premiums from the insured through its Agent at Aldridge Insurance Agency. It wasn't until after the Carter Wreck in February of 2021 that AmGuard first claimed there was some form of concealment or improper conduct by the insured, although, even then, the Policy remained in effect. In his deposition, Harold Padgett testified consistently with these facts, as the following demonstrates:

> Q:     Okay.
> A:     And then that's when Austin would really fill in, if something came in and nobody else was available.
> Q:     Okay. And so then that would have happened after this application was completed?
> A:     Correct.
> Q:     Okay. And when you fired that employee and Austin began driving A&H Towing trucks, did you inform your agent or the insurance company that Austin was operating as a driver for A&H Towing?
> A:     Not at that time, I don't think I did.
> Q:     Okay. At some point in time, did you inform your insurance company or the agent that Austin was driving for the company?
> A:     I did.
> Q:     Do you remember when that was?
> A:     **It was after the first wreck. Because I called the insurance company about the first wreck – or I called my agent. I never called the insurance company, but I called my agent. I let them know there was a wreck, Austin had been in a wreck, he was driving. And I talked to him about he wasn't on the policy. And he let me know that there was a clause or something in there. He said it would be fine because if I gave my family members permission to drive a truck, they could drive**.
> Q:     Okay.
> A:     Now, where it went after that, I have no idea.
> Q:     All right.
> A:     **But after the first wreck, I did talk to my agent. They knew everything that was going on.**
> Q:     **And when you say "the first wreck," are you referring to the Carter accident?**

> A:    The September wreck.
>
> **Q:    Oh, okay. The Killen accident**.
>       Are you familiar with what I'm talking about when I say the
> Killen accident?
>
> A:    Yes.

[Exh. 1, H. Padgett Dep., p. 20, ln. 3-25; p. 21, ln. 1-16]. Later in his testimony, Harold Padgett

again testified that he made the Agent aware that Austin Padgett was starting to drive some when

needed, as follows:

> Q:    Okay. And so you would agree that at the time that he was
> driving the A&H Towing vehicle prior to the impact in the Carter
> accident that he was operating the vehicle within the course and
> scope of his employment for A&H Towing?
>
> A:    I do.
>
> Q:    Okay. And do you- -
>
> A:    **I actually figured he was covered. Because they already
> knew about the first wreck**. **I had done talked to them, the
> agent, and told the agent he was driving part time, you know?
> And so I figured he was covered, I mean, at the second wreck**.

[Exh.1; H. Padgett Dep., p. 29, ln.15-25, p. 30, ln. 1].

a.    **Notice to Agent is Imputed to Insurer Estopping Insurer From Now Denying
      Notice of Information Provided To Its Agent as a Basis to Void the Policy**

All of the insured's communications regarding the Policy were through his Agent at

Aldridge Insurance Agency. [SUMF #4]. Mr. Padgett never communicated with anyone at

AmGuard until after the Carter Wreck occurred. [SUMF# 4, 36].

AmGuard does not dispute that Aldridge Insurance was the Agent through whom the Policy

was procured. [SUMF# 2; Ex. 6, Pl. Ans. Interrog. No. 4]. Aldridge Insurance Agency prepared

the Application for the Policy and collected premiums from the insured throughout the Policy

Period. [SUMF #3]. Aldridge Insurance Agency at all times relevant here was the agent acting on

behalf of the principal – AmGuard, under Tenn. Code Ann. § 56-6-115(b)[8]. It is well settled law in Tennessee that notice to an agent is imputed to the insurance company.[9]

As the foregoing demonstrates, after the Policy was issued, A&H Towing lost a driver which led to Austin Padgett driving to calls from time to time. AmGuard's agent, Aldridge Insurance Agency, was informed of this change in circumstance. This notice was provided in September of 2020 – approximately six months before the Carter Wreck. Whether the Agent failed to inform AmGuard or make changes to the Policy is of no consequence to the insured, because AmGuard is estopped from now claiming such information was not disclosed or was intentionally concealed, under Tennessee caselaw.[10] For example, the Tennessee Supreme Court, in Allstate Ins. Co. v. Tarrant, held, "an insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company." 363 S.W.3d 508, 519-520 (Tenn. 2012).

Harold Padgett's disclosure, in September of 2020, to the Agent that Austin Padgett was now driving to the occasional call as needed fulfilled his duty under the Policy. At minimum, the

---

[8] T.C.A. §56-6-115(b) provides, "An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary."

[9] See *Cashen v. Camden Fire Ins. Ass'n*, 348 S.W.2d 883, 887 (Tenn. App. 1961)(holding "the knowledge of or ***notice to a local agent of an insurance company is knowledge of or notice to the company employing such agent***."); *Bill Brown Const. Co. v. Glens Falls Ins. Co*., 818 S.W.2d 1, 6 (Tenn. 1991)(holding that "our Tennessee cases [have] consistently held insurers liable for the knowledge and representations of their agents, even where such liability had the effect of broadening the coverage of the written policy.").

[10] See e.g. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 519 (Tenn. 2012); *Bill Brown Constr. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991)(holding "as in the case of agencies in general an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority")

insured's disclosure of this information to the Agent demonstrates the insured's attempts to be forthcoming with the insurer and clearly negates any allegation that there was an intent to conceal this fact or somehow defraud AmGuard.

3. UNDISPUTED FACTS NEGATE ANY CLAIMS OF FRAUD AND INTENTIONAL CONCEALMENT RENDERING POLICY CONDITION INAPPLICABLE

The undisputed facts show (a) That at the time of the Application, Austin Padgett was not driving for A&H Towing in any capacity and hadn't been since the Fall of 2019; (b) After the policy was issued, A&H Towing lost a driver, and Austin began occasionally driving on a call when the company drivers were unavailable, although still employed as dispatcher/shop worker; (c) The brief failure of Harold Padgett to inform the insurer or the Agent of this change in circumstances before the Killen Wreck occurred was unintentional and without any indicia of fraud; (d) In September of 2020, soon after this change in circumstance, Harold Padgett specifically informed AmGuard's Agent, Aldridge Insurance Agency, that Austin Padgett was starting to drive on calls as needed to which the Agent advised he should be covered; and (e) After receiving notice of this information, the policy continued in effect with AmGuard collecting premiums through its Agent through the end of the Policy Period expiring July 12, 2021.

Based on the foregoing, AmGuard cannot rely upon Section IV.B.2. to void the Policy. AmGuard cannot produce evidence presenting a genuine fact question regarding whether the insured acted with "fraud" or "intent" to conceal material facts at any point in time. Furthermore, the undisputed facts showing that the insured did, in fact, inform the Agent of the change in circumstances after the Policy was issued clearly negate any claims that facts were fraudulently or intentionally concealed. Accordingly, because no genuine dispute of fact exists to support

Plaintiff's claims asserted in Count II of the Complaint, the Defendant is entitled to judgment as a matter of law.

CONCLUSION

Based on the foregoing, Defendants submit they are entitled to judgment as a matter of law under Fed. R. Civ. P. 56. Specifically, the undisputed material facts negate essential elements Plaintiff is required to establish under both Counts alleged in the Complaint, and Plaintiff is unable to produce evidence in the record to establish a genuine question of fact under either of its theories. Therefore, Defendants respectfully move the Court for entry of an order granting summary judgment to Defendants.

Respectfully Submitted:

THE MATTHEWS FIRM, PLLC

BY:     */s/ R. Holland Matthews*
R. Holland Matthews, #030486
700 N. Main Street
Columbia, TN 38401
931.381.2460
holland@matthewsinjurylaw.com
*Attorneys for Defendants A&H*
*Towing, Harold Padgett, Austin*
*Padgett, and John D. Venable*

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF filing system and/or via United States Mail on the parties not registered with the Court's electronic filing system:

Pamela Bagley Webb
Gordon, Rees, Scully, Mansukhani, LLP
4031 Aspen Grove Drive, Ste. 290
Franklin, TN 37067
pwebb@grsm.com
*Attorney for AmGuard Insurance Co.*

On this the 13th Day of January, 2023.

*/s/ R. Holland Matthews*
R. Holland Matthews