IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **AMGUARD INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | NO: 1:21-cv-00075 |
| **V.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **A&H TOWING, LLC ET AL.,** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Come now the Defendants, by and through counsel, and respectfully submit the following as Defendants' Response to Plaintiff's Motion for Summary Judgment [Doc. No. 34].

In addition to the statement of facts, law, and argument submitted herein, Defendants further rely upon Defendants' Response to Plaintiff's Concise Statement of Facts filed contemporaneously herewith, as well as Defendants' competing Motion for Summary Judgment [Doc. No. 30], Defendants' Statement of Undisputed Material Facts [Doc. No. 31], Defendants' Memorandum in Support of Summary Judgment [Doc. No. 32], and Defendants' Notice of Filing [Doc. No. 38] exhibits in support of Defendants' Motion for Summary Judgment.

### Plaintiff's Grounds for Summary Judgment

Plaintiff, AmGuard Insurance Company ("AmGuard"), seeks summary judgment allowing it to void coverage under the Policy based upon is its contention that the Towing Insurance Application ("Application") signed by Harold Padgett contained material misrepresentations. Specifically, Plaintiff claims that the insured's answers in the Application misrepresented the nature of Austin Padgett's employment and, further, failed to identify Austin Padgett as a "Driver."

The facts demonstrate that all information and representations made in the Application were true and correct when made, notwithstanding a change in circumstances well after the Policy was issued and delivered.

## Relevant Facts

A&H Towing was in the business of towing and roadside assistance from 2016 until it shutdown in October, 2022. [Def. SUMF, ¶1, Doc. No. 31, Page ID#535].

The Towing Insurance Application at issue is dated May 12, 2020. [Doc. No. 38-5, Page ID# 1026]. It was signed by Harold Padgett on July 5, 2020. [Doc. No. 38-5, Page ID# 1032]. The Policy was issued, delivered, and went into effect on July 12, 2020. [See Doc. No. 1-1, Page ID# 20].

The Application, on Page 1, requested the number of employees in the following format:

| OPERATION | # OF EMPLOYEES | PAYROLL | RECEIPTS |
|---|---|---|---|
| Towing | 4 | $ 100,000.00 | $ 250000 |
| Service Station | | $ | $ |
| Auto Mechanic | | $ | $ |
| Auto Body Shop | | $ | $ |
| Used Car Sales | | $ | $ |
| Dismantling/Salvage | | $ | $ |
| Repossession | | $ | $ |
| Trucking *If Trucking Section Completed, Need Receipts | | $ | $ |
| Other (Describe) | | $ | $ |

[Doc. No. 38-5, Page ID# 1026].

At the time the Application was submitted and when the Policy was delivered, A&H Towing had four employees who were as follows: Harold Padgett (owner/driver), Randal Venable (driver), Jerry Rich (driver), and Austin Padgett (dispatcher/shop mechanic). [Def. S.U.M.F., ¶ 10, Doc. No. 31, Page ID# 537; Decl. of H. Padgett, ¶ 7, Doc. No. 38-3, Page ID# 1018].

Although Austin Padgett drove for A&H Towing for approximately 6 months *when he first started working for the company in 2018/2019*, he accumulated too many points on his CDL in the Fall of 2019 and thereafter stopped driving in any capacity for approximately one year. [Def. S.U.M.F., ¶¶ 16-18, Doc. No. 31, Page ID# 539; Decl. A. Padgett, ¶¶ 2-6, Doc. No. 38-4, Page ID # 1022-1023; A. Padgett Dep., pp. 29-31, Doc. No. 38-2, Page ID#983-985]. When the Application was submitted and the Policy delivered, Austin Padgett was working solely as a dispatcher/shop mechanic and was not driving for A&H Towing in any capacity. [Def. S.U.M.F., ¶18, Doc. No. 31, Page ID# 539; Decl. A. Padgett, ¶6, Doc. No. 38-4, Page ID# 1023].

In a separate section attached to the end of the Application there is a "Driver Schedule Page" [See Doc. No. 38-5, Page ID# 1034] which requested the identity of persons authorized to drive A&H Towing vehicles. The Driver Schedule Page correctly listed the individuals who, at that time, were authorized to drive A&H Towing vehicles as follows: (1) Harold Padgett; (2) Randal Venable; (3) John Venable; and (4) Jerry Rich. [Doc. No. 38-5, Page ID# 1034]. Austin Padgett is not named in the Driver Schedule Page, because at the time of the Application Austin Padgett was not driving for A&H Towing in any capacity, but, rather, was working solely as the dispatcher and shop mechanic. [Def. S.U.M.F., ¶18, Doc. No. 31, Page ID# 539; Decl. A. Padgett, ¶6, Doc. No. 38-4, Page ID# 1023]. AmGuard, mistakenly, contends that this was some form of concealment or misrepresentation because the four listed individuals authorized to drive A&H Towing vehicles coincidentally corresponds to the number "4" listed under the number of its towing operation employees. However, only three of the four individuals listed in the Driver Schedule Page were employees of A&H Towing, as John Venable was not an employee at that time. [See Def. S.U.M.F., ¶12, Doc. No. 31, Page ID# 538; H. Padgett Depo., p. 19, Doc. No. 38-1, Page ID# 927]. Rather, John Venable was listed as a possible driver of A&H Towing vehicles

because he was the financer/lessor of one of the trucks. [See Def. S.U.M.F., ¶13, Doc. No. 31, Page ID #538; H. Padgett Depo., p. 19, Doc. No. 38-1, Page ID #927]. Although AmGuard now claims ignores this fact, it clearly knew at the time it issued the Policy that John Venable was considered a financer/lessor of one of the A&H Towing vehicles, as evidenced by the fact that the Policy names John Venable as an "Additional Insured (Lessor)" under the Lessor – Additional Insured and Loss Payee Endorsement. [See Policy, Doc. No. 1-1, Page ID# 52].

Simply put, the Application did not ask for the names of all A&H Towing employees. If it had, Austin Padgett would have been identified because he was employed as the dispatcher/shop mechanic, but not a driver.

## LAW & ARGUMENT

The statements and representations contained in the Application were all truthful and correct at the time the Application was signed and submitted and continued to be correct and truthful through the time the Policy was issued and delivered on July 12, 2020.

Whether an insurance policy is void for material misrepresentations in the application for insurance is governed by T.C.A. §56-7-103. Under this Statute, the insurer must first prove that the answers in the application were actually false. *Womack v. Blue Cross and Blue Shield*, 593 S.W.2d 294, 295 (Tenn. 1980). If the insurer cannot meet this burden, any further analysis is rendered moot.

The relevant time period for determining whether a statement in an insurance application is false or amounts to a material misrepresentation is *when the application is completed continuing up to the time the policy is delivered*. See *Adams v. Tenn. Farmers Mut. Ins. Co.*, 2010 WL 1444477 (Tenn. Ct. App., April 13, 2010)(holding that a representation or omission regarding a change in circumstances occurring after the policy is delivered is analyzed differently than

representations made in the application); *State Farm Life Ins. Co. v. Lawless*, 586 S.W.2d 468, 470 (Tenn. Ct. App. 1979)(holding "it is established in Tennessee that a representation made in an application for insurance is a *continuing affirmation of the truthfulness of such representation until the policy is delivered*.").

Whether the insured failed to notify the insurer of a change in circumstances *after* the policy was issued is not analyzed under the rules applicable to material misrepresentation in the application, under T.C.A. §56-7-103, and allegedly false statements (or concealments) made subsequent to the issuance of the policy are treated differently than those made in the application for insurance. See e.g. *Joyner v. Omaha Prop. & Cas. Ins. Co.*, 1993 WL 295049, *3 (Tenn. Ct. App. Aug. 4, 1993); *Adams*, 2010 WL 1444477 at *9. Accordingly, if the statements in the Application were truthful when made and remained so through the time the Policy was delivered, there cannot be a claim for material misrepresentation in the application, under T.C.A. §56-7-103.

1. **The Application Does Not Contain Any Misrepresentation Regarding Employees or Employment Status of Austin Padgett.**

The following representation in the Application regarding employees was correct and truthful when made:

| OPERATION | # OF EMPLOYEES | PAYROLL | RECEIPTS |
|---|---|---|---|
| Towing | 4 | $ 100,000.00 | $ 250000 |
| Service Station | | $ | $ |
| Auto Mechanic | | $ | $ |
| Auto Body Shop | | $ | $ |
| Used Car Sales | | $ | $ |
| Dismantling/Salvage | | $ | $ |
| Repossession | | $ | $ |
| Trucking *If Trucking Section Completed, Need Receipts | | $ | $ |
| Other (Describe) | | $ | $ |

Specifically, A&H Towing had four employees at the time the Application was submitted – Harold Padgett (owner/driver), Randal Venable (driver), Jerry Rich (driver), and Austin Padgett (dispatcher/shop mechanic). All of those employees worked in the company's towing operation business. Thus, this was not a false statement and cannot support a claim of material misrepresentation in the Application.

### A. A&H Towing's Only "Operation" Was "Towing."

To the extent AmGuard now contends that the above-cited portion of the Application should have identified Austin Padgett under a different "Operation" category, such as "Service Station" or "Auto Mechanic," Defendants submit that argument should be quickly dismissed based on the plain language in the Application. A&H Towing was in the business of conducting a towing operation. It was not in the business of conducting "Service Station Operations," "Auto Mechanic Operations," "Auto Body Shop," "Used Car Sales" or any of the other "Operations" categories listed in that portion of the Application, and Plaintiff cannot cite any evidence to the contrary.

Alternatively, should the Court entertain the Plaintiff's argument that this portion of Application should be construed such that Austin Padgett should have been listed under a separate "Operation" category because he did shop mechanic work on the company's own vehicles, Defendants submit that such an interpretation highlights the ambiguity of the Application's language. Any ambiguity must be construed against the insurer and cannot serve as a basis for supporting a motion for summary judgment.[1]

---

[1] It is well settled that ambiguous terms in an insurance policy must be construed in favor of the insured and against the insurer. Tata v. Nichols, 848 S.W.2d 649 (Tenn. 1993). Similarly, ambiguous language in an application for insurance which becomes incorporated into a policy of insurance must be subject to the same rules of interpretation. As noted by this Court in Frank v. Nationwide Mut. Fire Ins. Co., 2006 WL 861392, *7 (M.D. Tenn. March 28, 2006), the response to an ambiguous question in an insurance application cannot serve as a basis for summary judgment.

Simply put, the Application asks for the *number* of employees in the applicant's towing operation. At the time of the Application, A&H Towing had 4 employees. If the Application requested the names and identity of all employees in the towing operation, this information would've been provided and would've included Austin Padgett. However, this question was not asked, and information not requested in an insurance application is presumed immaterial.[2] Ultimately, it is the insurer's duty to tailor the questions in the application to extract the specific information desired and responses to ambiguous questions in an application cannot support a claim of material misrepresentation as a matter of law. *Sosebee v. Allstate Ins. Co.*, 2003 WL 21920924, *4 (E.D. Tenn May 16, 2003); *Tapco Underwriters, Inc. v. Bragg*, 60 F.3d 829, 1995 WL 399065, *3-4 (6th Cir. July 6, 1995).

### 2. The Application Did Not Misrepresent Authorized Drivers.

The Driver Schedule Page attached to the end of the Application accurately and truthfully lists four people who would possibly drive A&H Towing vehicles at that point in time, which correctly did not include Austin Padgett. Three of the individuals listed in the Driver Schedule were employees. One of them – John Venable – was not an employee of A&H Towing, but, rather, was listed on the Driver Schedule because he was an owner/financer/lessor of one of the trucks. AmGuard was aware that John Venable was the financer/lessor of one of the vehicles, as evidenced by its naming him as an Additional Insured (Lessor) under the Policy. Austin Padgett was not a driver and was not driving in any capacity when the Application was submitted and the Policy delivered. As such, it would not have been appropriate or truthful to list Austin Padgett on the Driver Schedule Page.

---

[2] Adams, 2010 WL 1444477 at *10 citing Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316 (1928).

Accordingly, AmGuard cannot claim that Austin Padgett should have been listed in the Driver Schedule Page or that a failure to do so amounts to a material misrepresentation.

### 3. A Post-Policy Change in Circumstances Does Not Void The Policy.

The Plaintiff's Motion appears to only rely upon its assertion that there was a misrepresentation in the Application. Defendants, nonetheless, feel the need to briefly address the issue of whether any post-policy change in circumstances rises to the level of intent to defraud coming within the Policy's Section IV.B.2 – Fraud Condition – quoted in the Plaintiff's Memorandum. [See Pl. Mem., p. 5, Doc. 34-1, Page ID#581]. As explained above, an insured's failure or delay in notifying the insurer of a change in circumstances after the insurance policy is delivered is not relevant to whether there was a material misrepresentation in the application for insurance, because any false statements or concealments *after* the issuance of the policy are treated differently and require clear evidence of fraud. See e.g. *Joyner v. Omaha Prop. & Cas. Ins. Co.*, 1993 WL 295049, *3 (Tenn. Ct. App. Aug. 4, 1993); *Adams*, 2010 WL 1444477 at *9. AmGuard, in its brief, acknowledges that any allegedly false statement or concealment made *after* the issuance of the policy can only serve to avoid coverage where the evidence establishes, on the plainest of grounds, that the post-policy statements or concealments were willfully and knowingly made with intent to defraud or deceive. [See Pl. Mem., p. 13, Doc. 34-1, Page ID# 589].

After the Policy was issued, a change in circumstances occurred leading to A&H Towing firing one of its drivers and, subsequently, causing Austin Padgett to occasionally operate a truck when all the company drivers were unavailable. [See Def. S.U.M.F., ¶¶20-22, Doc. 31, Page ID# 540]. AmGuard's agent was informed of this fact – thus placing AmGuard on notice – in September of 2020, approximately 6 months prior to the Carter Wreck. [See Def. S.U.M.F., ¶¶ 26-29, Doc. 31, Page ID# 541-542]. The facts surrounding this post-policy change in circumstances

and the law and argument demonstrating why it does not serve to void the Policy are further addressed with particularity in Defendant's Motion for Summary Judgment [Doc. 30, Page ID #391] and Defendants' Memorandum In Support of Summary Judgment [Doc. 32, Page ID# 546], which Defendants incorporate herein by reference.

In sum, the post-policy change in circumstances cannot serve as a basis for claiming a material misrepresentation in the Application, which appears to be the sole grounds on which AmGuard relies in claiming the Policy is void.

## CONCLUSION

As the foregoing demonstrates, the Plaintiff is not entitled to judgment as a matter of law based upon its claims that the insurance Application contained material misrepresentations. To the contrary, the facts demonstrate that the representations in the Application were correct and truthful at the time the Application was submitted and continued to be such through the date on which the Policy was delivered. The post-policy change in circumstances that led to Austin Padgett occasionally driving an A&H Towing vehicle did not occur until after the Policy was issued and, thus, cannot support a claim of material misrepresentation in the Application. Furthermore, regarding the Policy's Fraud/Concealment Condition found at Section IV.B.2, AmGuard cannot demonstrate any facts or evidence "on the plainest of grounds" of fraud to support a claim that the insured intentionally concealed or intended to defraud the insurer following the issuance of the Policy; it, therefore, cannot rely upon that provision in the Policy to deny coverage. At its core, this Action is an attempt by the insurer to avoid and delay indemnity payment for a large, catastrophic loss that should ultimately require AmGuard to tender its liability limit under the Policy to protect its insureds. Accordingly, Defendants respectfully submit that Plaintiff's Motion for Summary Judgment [Doc. No. 34] should be denied.

Respectfully Submitted:

THE MATTHEWS FIRM, PLLC

BY: */s/ R. Holland Matthews*
R. Holland Matthews, #030486
700 N. Main Street
Columbia, TN 38401
931.381.2460
holland@matthewsinjurylaw.com
*Attorneys for Defendants A&H Towing, Harold Padgett, Austin Padgett, and John D. Venable*

CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF filing system and/or via United States Mail on the parties not registered with the Court's electronic filing system:

Pamela Bagley Webb
Gordon, Rees, Scully, Mansukhani, LLP
4031 Aspen Grove Drive, Ste. 290
Franklin, TN 37067
pwebb@grsm.com
*Attorney for AmGuard Insurance Co.*

On this the 10th Day of February, 2023.

*/s/ R. Holland Matthews*
R. Holland Matthews